UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

BRYCE ZACKERY,                                     **Docket No.:**

                *Plaintiff,*

                                 **COMPLAINT**

    -against-

                                 **PLAINTIFF HEREBY**
RONDINONE STUDIO LLC, and              **DEMANDS A JURY TRIAL**
UGO RONDINONE, individually,

                *Defendants.*
-------------------------------------------------------------------X

       Plaintiff, Bryce Zackery, as and for his Complaint, respectfully alleges, all upon information and belief as follows:

## JURISDICTION AND VENUE

       1.      This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely 29 U.S.C. §§ 201 and 207, the federal Fair Labor Standards Act ("FLSA") and supplemental jurisdiction over the remainder of Plaintiff's claims under New York State Labor Law, §§1 *et seq.*, pursuant to 28 U.S.C. §1367.

       2.      Venue is proper under 28 U.S.C §1391(b) because some of the events or omissions giving rise to the claims herein occurred in the Southern District of New York and the Defendant does business in this District.

## IDENTITY OF THE PARTIES

3.     At all relevant times mentioned herein, Plaintiff Bryce Zackery ("Zackery") was employed by Defendants Rondinone Studio LLC (the "Studio") and Ugo Rondinone in the County of New York, City and State of New York, until he was forced out of his workplace on April 9, 2018, in retaliation for his complaints of wage and hour violations and unsafe working conditions, and due to the negative impact that the unsafe working conditions had on Zackery's physical health.

4.     At all relevant times mentioned herein, the Studio was and is a corporation duly organized and existing under the laws of the State of New York and does business in the County of New York, City and State of New York.

5.     The Studio is located in the residential neighborhood of Harlem, in Manhattan, where it is in the business of producing and selling the artwork of Defendant Ugo Rondinone.

6.     Defendant Ugo Rondinone is a world-renown artist whose artwork has been the subject of major solo exhibitions at the Kunsthalle, in Vienna, Austria; Museo de Art Contemporaneo in Leon, Spain; the Louisiana Museum of Modern Art in Humlebaek, Denmark; the Contemporary Arts Center in Cincinnati, Ohio; and the Sculpture Center in New York, represented Switzerland in the Venice Biennale Art Show and became a part of the permanent collections of prominent New York City art museums, such as the New Museum.

7.      At all relevant times herein, Defendant Ugo Rondinone is the principal owner and operator of the Studio and oversaw and supervised Zackery's work for the Studio (collectively, the Defendants are referred to herein as "Defendants" or "Rondinone").

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

8.      Zackery commenced his employment with Rondinone as a freelance sculptor in the Spring of 2011, while the Studio was located at 39 Great Jones Street, in downtown Manhattan.

9.      At all relevant times, Zackery was qualified for his position and fulfilled his duties in a satisfactory manner, which is demonstrated by the positive feedback he received and the fact that he was later hired to a full-time role in 2013.

10.      In his role as sculptor, Zackery reported to Office Manager Mattias Harold ("Harold") and Defendant Ugo Rondinone.

11.      Zackery generally worked ten (10) hours per day, typically five (5) days per week, generally Monday through Friday and sometimes worked on weekends, as well.

12.      Although Zackery's total hours regularly exceeded 40 hours per week, as he typically worked at least an additional 2 hours per day (at least 10 hours per week), Defendants failed to compensate Zackery at an overtime rate for any overtime hours worked.

13.     Defendants only paid Zackery twenty five dollars per hour ($25.00/hour), regardless of how many hours he worked that day or in that week, but only if he worked 8 or more hours in the day.

14.     Throughout his employment with Rondinone, Zackery complained to Defendants about their failure to pay him for the overtime hours that he worked.

15.     On at least one occasion, in or around July 2016, when Zackery complained to Harold about not getting paid overtime for a project he completed over a weekend, Zackery told Harold that he would be contacting the Department of Labor to make a complaint about the unpaid overtime wages.

16.     Harold responded, "That would be really bad for you, if you did that," which was a threat intended to chill Zackery from escalating his valid complaints about the unlawful manner in which he was being paid.

17.     To avoid paying Zackery the overtime differential of time and one half the regular rate of pay, Defendants would improperly apply the overtime hours Zackery worked in subsequent work weeks, and required him to take time off in that subsequent week to manipulate his weekly hours to 40 or less, so that he was denied the additional compensation he was entitled to receive for working overtime hours and the regular hours he would have worked in the subsequent work week if not for being forced to take time off.

4

18.     Therefore, Zackery is due additional compensation for each and every hour that he worked in excess of forty (40) hours per week, as he was entitled to be paid at the overtime rate of one and one half the regular rate of pay, or at least $37.50 per hour, for every hour he worked over 40 hours per week.

19.     Further, Zackery often was required to use hazardous materials to create large scale art projects for Rondinone.

20.     The use of the hazardous materials in the Defendants' workplace presented health risks to the handlers of the materials, since the work area was not properly ventilated and the workers were not consistently supplied with proper protective garments.

21.     Oftentimes, Zackery arrived at his workplace to find that undocumented and untrained workers had been using these hazardous materials overnight to continue production on the projects and the workplace had not been properly ventilated, which left Zackery exposed to breathe the airborne remnants of those materials.

22.     Further, Defendants' misuse of the hazardous materials presented a health risk to and the public-at-large, as the workplace is located in a converted church that is not suitable for diverting and ventilating the airborne hazardous materials, and is located on a residential block and lot that is not properly zoned for use of manufacturing, and Defendants used a large electric fan to blow airborne fumes from inside the Studio onto busy street blocks of residential upper Fifth Avenue, in

Harlem, where neighborhood residents would unknowingly be exposed to the airborne hazardous materials while walking in close proximity to the Studio.

23.    Zackery regularly complained to Defendants about the improper and unlawful exposure to the hazardous materials on behalf of himself, his colleagues, including the undocumented workers, and that the public was being exposed to the hazardous materials.

24.    Specifically, Zackery complained that the hazardous materials being used in the production of Defendants' art work required proper training, proper equipment and to be completed in properly zoned areas.

25.    Zackery also complained about the erosion of his own respiratory health, which he reasonably believed was being caused by the regular exposure to the hazardous materials while working in the Studio.

26.    Neither Rondinone, Ugo Rondinone or Harold individually, took any steps to address Zackery's complaints and indeed, pushed for the work using the hazardous materials to continue.

27.    When Zackery initially complained Ugo Rondinone directly, he cited "increased production costs" and unilaterally imposed production deadlines to create more editions of the art work as the reasons why he would not curb the use of the hazardous materials or look for a more appropriate site to continue production, after training and equipping the staff for proper use of the

hazardous materials.

28.    At a meeting of the artists in February 2016, and while the art project was underway, Zackery, along with his colleagues Wesley M. Berg ("W. Berg"), Alan Berg ("A. Berg") and Daniel Boccato ("Boccato"), had a meeting with Harold and Stuart Mitchell ("Mitchell"), Technical Manager at Rondinone, and they requested that the Studio halt production of the art work until production was moved to a more suitable location and, on a more immediate basis, that all of the Studio employees receive a medical assessment and benefits to cover the expense.

29.    Harold and Mitchell rejected Zackery's complaint.

30.    In response, Zackery, W. Berg, A. Berg and Boccato advised Harold and Mitchell that they would be contacting the Occupational Safety and Health Administration ("OSHA") and the Department of Labor about this issue, to which Harold responded, "That would be really bad for Ugo and for you guys as well, if you like your jobs. I would suggest you don't do that."

31.    Zackery objected to Harold's threat and responded that he and his colleagues had "rights to a safe work environment."

32.    Harold laughed in Zackery's face and responded, "You have no rights."

33.     Rather than address Zackery's concern, Rondinone retaliated against Zackery by later reducing his work schedule from 5 days per week to 4 days per week, citing "high production costs" as the reason for the reduction in work hours.

34.     Given the close proximity in time to Zackery's complaint, the Studio's reason was a clear pretext to mask the retaliatory intent to chill Zackery into keeping silent and discouraging him from moving forward with his complaints to OSHA and the Department of Labor.

35.     Further demonstrating that the real reason for the reduction in work schedule was to retaliate and chill Zackery was the fact that the Studio hired additional workers to increase production of the art work that required use of the hazardous materials, and the graphic design team also hired an additional person during this time period.

36.     Despite Rondinone's threats and retaliatory response to Zackery's complaint, Zackery escalated his concerns to OSHA, who did an inspection of the Studio shortly thereafter, in or around August 2017.

37.     During the inspection, in or around November 2017, Ugo Rondinone demanded that Zackery and his colleagues assist him in deceiving the inspector by hiding the hazardous materials, which Zackery refused to do.

8

38.     In the months following the inspection, Ugo Rondinone and Harold began a campaign of degrading and taunting Zackery, regularly asking him why he still wanted to work for Rondinone and telling him he was "no longer a fit" to be working with Defendants.

39.     During this same period of time, Ugo Rondinone also began criticizing Zackery for "not doing extra work" around the Studio to assist the other artists, to which Zackery replied that he "used to do extra work, but [Ugo] never compensated [Zackery] for it" to which Ugo Rondinone replied, "Why are you here? Wouldn't you rather work for some other artist you actually like? Why don't you just go there?"

40.     On or about March 9, 2018, Ugo Rondinone called another meeting with Zackery and some of his colleagues, including A. Berg, purportedly to discuss OSHA compliance, but OSHA compliance was not discussed, and instead Ugo Rondinone used the meeting as an opportunity to attack Zackery's character, criticize his claims of an unsafe workplace as "irrational" and tell Zackery that he had "no authority to tell anyone to comply with OSHA regulations."

41.     Despite ongoing complaints from Zackery that the exposure to the hazardous materials was negatively impacting his own respiratory health, the Studio continued to require that Zackery use the hazardous materials in this unsafe workplace, which caused further harm to his health.

42.     Zackery's workplace continued to cause him health problems until, on April 8, 2018, Zackery's physician recommended that Zackery stop working at the Studio due to his ongoing respiratory issues.

43.     Defendants' deliberate requirement that Zackery continue to misuse hazardous materials, and/or failure to take action to cease improper and unlawful use of hazardous materials, which Defendants were aware caused respiratory health complications for Zackery, was an intentional act designed to force Zackery out of his workplace and constitutes an unlawful and retaliatory constructive discharge.

44.     Zackery's last day of work was April 9, 2018.

45.     Zackery made a claim pursuant to the Workers' Compensation laws for the injuries he sustained to his respiratory health, and pursuant to Workers' Compensation Board Case Number G225 4322, Zackery was found to be entitled to Workers' Compensation benefits from Rondinone.

46.     Here, Defendants' conduct has such a high degree of moral culpability, which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, that, in addition to the damages inflicted upon Zackery and in addition to all measures of relief to which Zackery may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in order to deter Defendants and others similarly situated from such conduct in the future, as is appropriate to effectuate the purposes

of the FLSA and NYLL, in an amount to be determined at trial.

### AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF ZACKERY AND AGAINST BOTH DEFENDANTS FOR VIOLATION OF FLSA OVERTIME LAW, 29 U.S.C. §201, *et seq.*

47.    Zackery repeats, re-alleges and incorporates in full paragraphs 1 through 46 of this Complaint as though fully set forth at length herein.

48.    Throughout his employment, Defendants knowingly failed to pay Zackery for work performed above forty (40) hours per workweek in violation of the federal overtime provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207.

49.    Zackery is not an exempt employee under the relevant provisions of the FLSA.

50.    Zackery is entitled to recover compensatory damages for the unpaid overtime hours that he worked, liquidated damages as provided by the FLSA, attorney's fees and costs, along with such other and further relief as this Court deems just and proper.

### AS FOR A SECOND CAUSE OF ACTION ON BEHALF OF ZACKERY AND AGAINST BOTH DEFENDANTS FOR VIOLATION OF NYLL OVERTIME LAW, NYLL § 650, *et seq.*

51.    Zackery repeats, re-alleges and incorporates in full paragraphs 1 through 50 of this Complaint as though fully set forth at length herein.

11

52.     Throughout his employment, Defendants knowingly failed to pay Zackery for work performed above forty (40) hours per workweek in violation of the overtime provisions of the New York State Labor Law ("NYLL"), Article 6 §198.

53.     Zackery is not an exempt employee under the relevant provisions of the NYLL.

54.     Zackery is entitled to recover compensatory damages for the unpaid overtime hours that he worked, liquidated damages as provided by NYLL Article 6 §198, attorney's fees and costs, pre- and post-judgment interest, along with such other and further relief as this Court deems just and proper.

## AS FOR A THIRD CAUSE OF ACTION ON BEHALF OF ZACKERY AND AGAINST BOTH DEFENDANTS FOR FAILURE TO PROVIDE WTPA NOTICES IN VIOLATION OF NEW YORK LABOR LAW §195 AND §198

55.     Zackery repeats, re-alleges and incorporates in full paragraphs 1 through 54 of this Complaint, as though fully set forth at length herein.

56.     As Zackery was hired by Defendants after the effective date of the New York Wage Theft Protection Act ("WTPA"), April 9, 2011, and hired to a full time role in 2013, well after the WTPA's effective date, the Defendants' failure to provide Zackery with the proper WTPA wage notices constitute violations of New York Labor Law ("NYLL") §195 and §198.

57.     As such, Defendants are liable to Plaintiff for statutory damages not to exceed $2,500 for failure to provide the initial wage notice pursuant to NYLL §195(1)(a) and §198(1-b) and statutory damages of $100 for each work week that the violation occurred or continued to occur through December 29, 2014, as well as reasonable attorneys' fees and costs.

## AS FOR A FOURTH CAUSE OF ACTION ON BEHALF OF ZACKERY AND AGAINST BOTH DEFENDANTS FOR RETALIATION IN VIOLATION OF NYLL §740

58.     Zackery repeats, re-alleges and incorporates in full paragraphs 1 through 57 of this Complaint as though fully set forth at length herein.

59.     Zackery' complaints to Defendants about using hazardous materials in an unsafe manner, in dangerously close proximity to the unaware general public in residential Harlem, including his complaint that he would contact OSHA if the conduct was not corrected, which Defendants knew Zackery was forced to do, constituted a protected activity pursuant to NYLL §740 of which Defendants were aware.

60.     Defendants' subsequent reduction in Zackery's work schedule and deliberate requirement that Zackery continue to misuse hazardous materials, and/or failure to take action to cease improper and unlawful use of hazardous materials, which Defendants were aware caused respiratory health complications for Zackery that forced Zackery out of his workplace, constitutes an unlawful retaliatory constructive discharge.

13

61.     The aforementioned acts of Defendants constitute unlawful retaliation against Zackery

in violation of New York Labor Law §740(2)(a) which provides, *inter alia* that:

> An employer shall not take any retaliatory personnel action against an
> employee because such employee does any of the following: (a)
> discloses, or threatens to disclose to a supervisor or to a public body
> an activity, policy or practice of the employer that is in violation of
> law, rule or regulation which violation creates and presents a
> substantial and specific danger to the public health or safety, or which
> constitutes health care fraud; (b) provides information to, or testifies
> before, any public body conducting an investigation, hearing or
> inquiry into any such violation of a law, rule or regulation by such
> employer; or (c) objects to, or refuses to participate in any such
> activity, policy or practice in violation of a law, rule or regulation.

62.     As a result of Defendants' violations of Labor Law §740, Defendants are liable to

Zackery for all the relief provided for in Labor Law §740(5), including all "lost wages, benefits and

remuneration," both prior and prospective, "fringe benefits," as well as "reasonable costs,

disbursements and attorney's fees," as provided for under the law.


**AS AND FOR A FIFTH CAUSE OF ACTION, IN THE ALTERNATIVE,
AGAINST UGO RONDINONE, INDIVIDUALLY, FOR AIDING AND
ABETTING RETALIATION IN VIOLATION OF NYLL §740**

63.     Zackery repeats, re-alleges and incorporates in full paragraphs 1 through 62 of this

Complaint, as though fully set forth at length herein.


64.     Should Ugo Rondinone not be found to be Zackery's "employer" under the NYLL,

Ugo Rondinone aided, abetted and compelled the retaliation against Zackery, for his whistleblowing

practices that present a danger to the health, welfare and safety of the public, so that Ugo Rondinone

14

should be held personally liable.

65.     The aforementioned acts of Ugo Rondinone constitute unlawful aiding and abetting

unlawful retaliation against Zackery in violation of NYLL §740(2)(a) which provides, *inter alia* that:

> An employer shall not take any retaliatory personnel action against an
> employee because such employee does any of the following: (a)
> discloses, or threatens to disclose to a supervisor or to a public body
> an activity, policy or practice of the employer that is in violation of
> law, rule or regulation which violation creates and presents a
> substantial and specific danger to the public health or safety, or which
> constitutes health care fraud; (b) provides information to, or testifies
> before, any public body conducting an investigation, hearing or
> inquiry into any such violation of a law, rule or regulation by such
> employer; or (c) objects to, or refuses to participate in any such
> activity, policy or practice in violation of a law, rule or regulation.

66.     As a direct and proximate result of Ugo Rondinone's violations of NYLL §740, he

should be held personally liable to Zackery for all the relief provided for in NYLL §740(5), including

all "lost wages, benefits and remuneration," both prior and prospective, "fringe benefits," as well as

"reasonable costs, disbursements and attorney's fees," as provided for under the law.

**WHEREFORE**, Plaintiff Bryce Zackery demands judgment against Defendants Rondinone

Studio LLC and Ugo Rondinone, or, in the alternative, Ugo Rondinone, individually, as follows:

a.     An award of compensatory damages equal to all unpaid overtime wages pursuant to
the FLSA and NYLL;

b.      An award of compensatory and liquidated damages, including costs and reasonable
attorney's fees, pursuant to the FLSA;

15

c.     An award of compensatory, liquidated and/or punitive damages pursuant to the NYLL, including but not limited to NYLL §663(1) for willful violations of NYLL;

d.     An award of attorney's fees and costs pursuant to NYLL §§198 and 663(4);

e.     An award of compensatory damages, including all lost wages, both prior and prospective, as well as liquidated damages, costs and reasonable attorney's fees in violation of New York Labor Law §740;

f.     An award of pre- and post-judgment interest as provided by law;

g.     An award of the costs of this action; and

h.     For such other and further relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
     DAVIDA S. PERRY
     DANIEL H. KOVEL
     3 Park Avenue, 27th fl.
     New York, New York 10016
     (212) 889-6565